IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> TERRY PEACE, <br> DEFENDANT | CRIMINAL ACTION NO. <br> 4:14-cr-00011-SCJ-WEJ |

### Government's Opposition to Peace's Motion for Compassionate Release

The United States of America respectfully requests that the Court deny defendant Terry Peace's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because the defendant has failed to exhaust the administrative remedies as required under the First Step Act.

## Background

### 1. Factual Overview

In January 2014 through early February 2014, Terry Peace ("PEACE"), Brian Cannon ("Cannon") and Cory Williamson ("Williamson") were members of a militia who conspired with one another to launch a destructive assault against federal agencies, specifically the Department of Homeland Security, the Federal Emergency Management Administration, and the Transportation Security Administration. (Doc. 1 at Affidavit ¶ 4). Their goal was to disrupt government operations through targeted attacks against the government infrastructure to include vehicles, buildings, and power and communication lines used by those agencies. (*Id.*, ¶¶ 8, 11, 20).

Pursuant to their plan, PEACE and his co-defendants attempted to recruit other militia members to carry out similar attacks in other states. (*Id.*, ¶¶ 4, 9, 10, 21). Their recruitment efforts mainly occurred in an online chat group located on

a popular social media site. (*Id.*, ¶ 4). One of the members of the chat group, however, was a confidential source ("CS") who alerted FBI about the developing plan. (*Id.* 1, ¶¶ 4, 5).

In order to carry out this vicious attack, on or about February 8, 2014, PEACE asked the CS to obtain a thermite device capable of going through the engine of a MRAP, which is an armored vehicle that is owned by state and local law enforcement agencies. (*Id.* 1, ¶ 15). PEACE additionally requested 12 pipe bombs constructed for "maximum fragmentation." (*Id.*, ¶ 17).

On February 15, 2014, PEACE, Williamson and Cannon travelled together and met with the CS at a predetermined location. (*Id.*, ¶¶ 27, 28). Prior to the meeting, the FBI provided the CS with 12 inert pipe bombs and 2 thermite devices. (*Id.*, ¶ 26). While the CS was in the process of transferring the devices to the subjects' vehicle, FBI arrested PEACE and his co-defendants. (*Id.*, ¶ 29).

## 2. Procedural History

On March 12, 2014, a federal grand jury returned a one-count indictment charging PEACE and his co-defendants with Conspiracy to Receive and Possess Unregistered Destructive Devices in violation of 18 U.S.C. § 371. (Doc. 27). The federal grand jury returned a Superseding Indictment on August 14, 2014, that added a second count. (Doc. 75). Count Two accordingly charged PEACE and his co-defendants with Conspiracy to Use Weapons of Mass Destruction, in violation of 18 U.S.C. § 2332a(a)(2)(A). (*Id.*).

PEACE subsequently entered a guilty plea to Count Two of the Superseding Indictment. (Doc. 109). On August 28, 2015, the District Judge sentenced PEACE to serve 144 months in prison. (Doc. 133).

Peace filed the instant *Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)* on May 21, 2020,. (Doc. 151). Peace asserts that, due to his mental health conditions and asthma, his potential exposure to COVID-19 is an "extraordinary and compelling reason" justifying his release under the statute. (*Id.* at 1). For the reasons below, the motion should be denied.

## Discussion

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, provides the steps a defendant must take before filing, and the factors a court must consider before ruling on, a compassionate release motion:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Prior to the First Step Act, a defendant could petition only the Bureau of Prisons ("BOP") for compassionate release. At that time, "[a]bsent a motion by the Director of the BOP, a federal court lack[ed] jurisdiction to consider compassionate release." *Steiniger v. Drew*, No. 1:13-CV-2300-TWT, 2014 WL 641984, at *2 (N.D. Ga. Feb. 19, 2014). The First Step Act added authority for an inmate himself to file a motion in district court seeking relief, but only after exhausting his BOP administrative remedies, or after the passage of 30 days following a request to the warden, whichever is earlier. *See* First Step Act, § 603(b)(1), Pub. L. No. 115-391, 132 Stat. 5194; *see also, e.g.*, *United States v. Solis*, No. CR 16-015-CG-MU, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019) (denying motion for compassionate release because defendant failed to exhaust administrative remedies); *United States v. Estrada Elias*, No. 6:06-096-DCR, 2019 WL 2193856, *2 (E.D. Ky. May 21, 2019) (same).

The BOP has promulgated regulations to govern the filing and evaluation of requests to file compassionate release motions. *See* 28 C.F.R. § 571.60-.64. The inmate should submit the request to the warden and should include, at a minimum, "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration" and "[p]roposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment." *Id.* § 571.61(a).

Congress had good reason for requiring an inmate to petition the BOP for release first and then wait 30 days for an answer before filing in court: during that time, the Bureau of Prisons conducts an extensive assessment of each

compassionate release request. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. When the warden denies such a request, the inmate may appeal that decision administratively. 28 C.F.R. § 571.63(a). But a denial by the General Counsel or the Director of the BOP constitutes a final administrative decision, with no further administrative appeals available. *Id.* § 571.63(b)-(d); *see also* 28 CFR § 542.15(a). As Second Circuit Judge Richard Sullivan recently noted, "[r]equiring would-be litigants to exhaust their administrative remedies before ascending the courthouse steps serves several purposes," including permitting BOP to correct mistakes and promoting efficiency. *United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at *2 (S.D.N.Y. Apr. 14, 2020).

The Eleventh Circuit has held that "a district court lacks jurisdiction to modify a sentence unless § 3582(c)(1) or (c)(2), another statute, or Rule 35 expressly permits a sentence modification." *United States v. Brennan*, 766 F. App'x 911, 913 (11th Cir. 2019). Administrative exhaustion is a statutory prerequisite without which the court "may not modify a term of imprisonment" under 18 U.S.C. § 3582(c)(1)(A)(i). District courts therefore have no jurisdiction to grant compassionate release motions brought by inmates who have not exhausted administrative remedies. *Cf. United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010) (holding that prerequisites for relief under § 3582(c)(2) are jurisdictional). That is consistent with the longstanding rule that a district court possesses no

5

inherent authority to modify a sentence that has been imposed. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979).[1]

The Third Circuit recently issued a precedential opinion holding that the exhaustion requirement "presents a glaring roadblock foreclosing compassionate release" in response to a coronavirus-based motion. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Similarly, on April 8, 2020, Chief Judge Thrash denied, for failing to exhaust administrative remedies, an emergency motion for compassionate release based on the coronavirus. *United States v. Lepore*, Case No. 1:15-CR-367-1-TWT, Doc. 336, at 3 (N.D. Ga. Apr. 7, 2020) (holding that because the defendant had "failed to exhaust his administrative remedies, . . . this Court has no authority to modify his sentence") And numerous district courts around the country have likewise concluded that, prior to administrative exhaustion, they lack jurisdiction to modify imposed sentenced in response to COVID-19.[2]

Here, Peace failed to exhaust administrative remedies because he never asked for compassionate release based on COVID-19. The inmate request form he

---

[1] At a minimum, the exhaustion requirement is a mandatory claim processing rule that must be enforced if the government "properly rais[es]" it. *Eberhart v. United States*, 546 U.S. 12, 19 (2005).

[2] *See, e.g.*, *United States v. Allen*, No. 2:14-CR-024, 2020 WL 2199626, at *2 (S.D. Ga. May 6, 2020); *United States v. Gray*, No. CR 2:01-00007-KD-C, 2020 WL 2132948, at *6 (S.D. Ala. May 4, 2020); *United States v. Zamor*, No. 17-20353-CR, 2020 WL 2062346, at *1 (S.D. Fla. Apr. 29, 2020); *United States v. Reid*, No. 17-CR-00175-CRB-1, 2020 WL 1904598, at *4 (N.D. Cal. Apr. 18, 2020) ("The Court cannot forgive the failure to exhaust, and without exhaustion, the Court lacks jurisdiction over the motion."); *United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

attached asked for compassionate release based on "many chronic problems that would be better treated by private physicians and the VA" including asthma, PTSD, depression, and arthritis.  (Doc. 151, Exh. C). Nowhere did Peace mention his allegedly heightened risk of COVID-19 as a reason for compassionate release. And that is a crucial omission.

"Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden." *United States v. Mogavero*, No. 215CR00074JADNJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020); *see also United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020) ("Simply put, the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the Bureau of Prisons first."); *United States v. Mollica*, 2020 WL 1914956, at *6 (N.D. Ala. Apr. 20, 2020).

The purpose of the exhaustion requirement is to afford the BOP the opportunity, employing its superior familiarity with the inmate's condition and the care available to the inmate in custody, to assess the request in the first instance and then advise the court of its view of the situation. *See United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) ("One of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue. To properly exhaust administrative remedies, therefore, the administrative complaint must raise the same claims asserted in the federal court filing.") (citation omitted). Just as in ordinary times, the BOP is most familiar with the current care available and the current conditions at the inmate's institution, which it must assess when reviewing the inmate's latest request. Consistent with

the statutory terms, it must be afforded the opportunity to conduct that assessment in the first instance. Because the "new calculus" of COVID-19 "was not presented to the warden," Peace has "failed to properly exhaust the administrative process with the warden before submitting this motion, and this deficiency alone justifies denying [his] motion." *Mogavero*, 2020 WL 1853754, at *2.

The coronavirus has been a cause of concern for the entire nation, and the BOP has taken active steps to protect its inmates. Thus, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. Under § 3582(c)(1)(A), the defendant must address his concerns to the BOP first and fully exhaust administrative remedies before turning to this Court.

## Conclusion

Because Peace failed to exhaust the administrative remedies as required, his motion must be denied.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

/s/ Tracia M. King
*Assistant United States Attorney*
Georgia Bar No. 421380

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000; fax (404) 581-6181

8

## **CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that this document was prepared using Book Antiqua 13 point font, and that I have caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system:

This 28th day of May, 2020.

/s/ Tracia M. King
*Assistant United States Attorney*